**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

PHILIP BUTT ET AL.,                              *

      Plaintiffs,                              *

      v.                              *                    Civil No.   20-2318-BAH

AARAN KIMBERLY WILLIAMS ET AL.,          *

      Defendants.                              *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**<u>MEMORANDUM OPINION</u>**

    This matter is before the Court on Defendant United States of America's ("Defendant United States'" or "the Government's") Motion to Dismiss Plaintiffs' claims against it for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) (hereinafter "Motion to Dismiss"), ECF 50, and Defendant Aaran Kimberly Williams' ("Defendant Williams' or Ms. Williams'") Motion for Certification seeking formal clarification pursuant to 28 U.S.C. § 2679(d)(3) that Ms. Williams was a government employee acting within in the scope of her employment for purposes of the Federal Tort Claims Act ("FTCA") at the time of the accident giving rise to this litigation (hereinafter "Motion for Certification"), ECF 69.  The Court has considered both motions, accompanying memoranda of law, attached exhibits, and responsive filings.[1]  All pending motions are now ripe, and the Court finds that no hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2023).  For the reasons stated below, the Government's Motion to Dismiss, ECF 50, is **GRANTED** and Defendant Williams' Motion for Certification, ECF 69, is **GRANTED**.

---

[1] The Court references all filings by their respective ECF numbers and cites to the ECF-generated page numbers at the top of the page.

I.        **Factual and Procedural Background**

This action stems from a September 16, 2019, incident occurring at a security checkpoint

on the grounds of the National Security Agency's ("NSA's") Friendship Annex ("FANX") in Anne

Arundel County, Maryland, involving Plaintiff Philip Butt ("Mr. Butt") and Defendant Williams,

both of whom are NSA employees.   ECF 34, at 2.   The NSA requires employees performing

classified work, like Ms. Williams, to be on-site to perform their job duties.   ECF 72-4, at 7.   All

employees entering FANX, whether by personal vehicle, an employee shuttle bus, or on foot, must

pass through a security checkpoint that sits on NSA property.   ECF 69-4, at 13.   The vehicle

checkpoint at issue in this case is marked by an arm that raises and lowers to allow vehicles to

pass.   ECF 69-3, at 6.   The checkpoint is enforced by NSA police officers, who require all

employees entering FANX by personal vehicle to produce an NSA-issued identification badge[2]

and show it to an NSA police officer.   ECF  69-4, at 12–13.   If the security gate's arm is down, the

NSA police officer on duty will ensure that the identification badge is valid and then raise the arm

up and let the employee's vehicle through.   ECF 69-3, at 6.   If the arm is already raised, the officer

will verify the identification badge and wave the employee through the vehicle checkpoint.   *Id.*

Pedestrian employees must show an NSA-issued identification badge to pass through unmanned

turnstiles.   ECF 69-4, at 13.   Employees taking the NSA-provided shuttle show their badge upon

---

[2] The identification that must be shown to NSA police to pass through checkpoints, and which is also used to enter buildings on NSA property, is referenced throughout depositions and filings as a "badge."   *See* ECF 69-1, at 5 (Defendant William' Memorandum of Law); ECF 69-3, at 6 (Deposition of Defendant Williams); ECF 69-4, at 5 (Deposition of Thomas R., Defendant Williams' Supervisor).

entering the shuttle to the shuttle driver, who then informs the NSA police at the security checkpoint that all passengers are NSA employees.  *Id.* at 5.

After passing through the security checkpoint, Ms. Williams also had to badge in[3] to the FANX building and again to her office space.  ECF 69-3, at 11.  Sometimes, however, she would talk to coworkers or contractors on the phone on her commute to work before she passed through the security gate, as well as after she passed through security but before she badged into FANX or sat down at her desk.  *Id.* at 15–19.  Ms. Williams testified that her supervisor, Thomas R.,[4] instructed her that she could begin tracking her time[5] when she passed through the security gate. *Id.* at 13–14.  Thomas R. did not recall ever instructing Ms. Williams as such, as he understood that employees' time ran from when they first badged into an NSA building, like FANX, or a contractor's building.  ECF 69-4, at 8–11.

On September 16, 2019, Mr. Butt was driving to work at FANX in his own vehicle.  ECF 34, at 2.  Mr. Butt entered onto NSA property, stopped his car at the security checkpoint, and presented his identification badge.  *Id.*  Mr. Butt was permitted by NSA police to pass the checkpoint and proceeded to drive his car forward as the security gate's arm was raised so that his

---

[3] The process of tapping or swiping an employee's identification badge to or through a reader to admit the employee to NSA buildings is referenced throughout depositions and filings as "badging in" or "badging into" buildings.  *See* ECF 72, at 2 (Defendant United States' Opposition); ECF 69-4, at 4 (Deposition of Thomas R., Defendant Williams' Supervisor); ECF 69-3, at 11 (Deposition of Defendant Williams).

[4] Thomas R., who provided deposition testimony in his own capacity and as the NSA's corporate designee, ECF 72-4, at 4, is identified only by his last initial for security reasons pursuant to the protective order entered in this case.  ECF 68, at 3.

[5] Defendant Williams was required to work eighty (80) hours in a two week pay period.  ECF 72-3, at 5–6.  Her schedule was "flexible," but she stated in a previously filed affidavit that she "habitually worked roughly from 5:30 am until 2:30 pm" on her required workdays.  ECF 52-3, at 1.  Though not described in detail, it is clear from the filings and depositions that Defendant Williams was required to "track" the hours she worked in order to establish that she met the required total of 80 hours.   ECF 72-3, at 8; ECF 72-4, at 8.

vehicle could pass. *Id.*  As Mr. Butt passed through the gate, Defendant Williams, who was also driving her own vehicle, reached the checkpoint, but, by her own admission, failed to stop and show her identification to NSA police. *Id.*; ECF 69-3, at 6.  To counter a possible security threat posed by Defendant Williams' vehicle, the NSA police officer manning the checkpoint activated a barrier that "immediately deployed directly in the path of the Plaintiff's oncoming vehicle causing it to strike the barrier." ECF 34, at 2.  Mr. Butt's "rear tires were caught in the barrier causing his vehicle to hit the [J]ersey barrier and shooter shack,[6] and causing the Plaintiff to sustain serious personal injuries and significant damage to his vehicle." *Id.*

Mr. Butt, along with his wife, Sandra Butt, initially filed suit in the Circuit Court for Prince George's County on June 17, 2020.  ECF 1, at 1.  Plaintiffs sued only Ms. Williams, alleging negligence (Count 1) and loss of consortium (Count 2).  ECF 1-2, at 2–3.  On August 10, 2020, Defendant Williams removed the action to this Court under 28 U.S.C. § 1441(a), invoking "federal enclave jurisdiction" because the incident occurred on federal property.[7]  ECF 1, at 2.

On December 2, 2020, Defendant Williams filed a Motion for Summary Judgment, alleging that she was immune from liability under the FTCA because she was acting within the scope of her federal employment when the incident occurred.[8]  ECF 10.  On July 27, 2021, Judge

---

[6] The term "shooter shack" is not defined in ECF 34 but the Court assumes it is a colloquial term for the small structure that serves as a guard house for NSA police stationing the checkpoint.

[7] Because "[t]he federal government [ ] possesses 'sole jurisdiction' over its enclaves," "[f]ederal courts have federal question jurisdiction over tort claims that arise on 'federal enclaves.'" *Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178, 218 (4th Cir. 2022) (first quoting *Surplus Trading Co. v. Cook*, 281 U.S. 647, 652 (1930), then quoting *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006)).

[8] Plaintiffs opposed the motion.  ECF 15.  Though Plaintiffs agreed that Defendant Williams was "an employee of the United States," Plaintiffs argued that the record was "unclear" as to whether her "negligence occurred within the scope of her employment."  ECF 15, at 3.

Charles Day denied summary judgment after finding "no evidence that Defendant [Williams] followed the statutory procedures of the FTCA," so she was not entitled to personal immunity under that statute.  ECF 20, at 5.  Judge Day specified that there was no record of the "Attorney General either certifying [Defendant Williams'] employment or refusing to certify her employment" as required by 28 U.S.C. § 2679(d)(1)–(3).  *Id.*  Finding that Defendant Williams failed to meet her burden, Judge Day held that "[t]he Court cannot determine at this stage whether Defendant was acting within the scope of her employment" at the time of the September 16, 2019, incident.  *Id.*

Soon thereafter, Plaintiffs' insurer, GEICO, sought leave to intervene in the case because "Plaintiffs intend[ed] to pursue uninsured/underinsured motorist benefits through their contract with GEICO."  ECF 22, at 1.  Judge Day granted GEICO's motion.[9]  ECF 23.  The case was then re-assigned to the undersigned on February 18, 2022.  GEICO filed an answer to the complaint on March 22, 2022.  ECF 30.

On May 12, 2022, Plaintiffs filed an amended complaint, adding the United States of America as a defendant.[10]  ECF 34, at 1.  In short, Plaintiffs alleged that Defendant Williams was an "actual and/or apparent agent, servant, and[/]or employee of [the] United States of America."  *Id.* at 3.  Plaintiffs averred that at the time of the incident, Defendant Williams was on NSA property as a federal government employee and therefore "the United States of America is responsible for the errors, negligent acts, omissions and/or commission of negligence under the

---

[9] GEICO had previously sought permission to intervene, ECF 16, which was granted by Judge Day, ECF 17.  GEICO quickly moved to withdraw from the case, ECF 18, which was also granted, ECF 19.

[10] Defendant Williams and Intervenor GEICO consented to the filing of the amended complaint pursuant to Federal Rule of Civil Procedure 15(a)(2).  ECF 45.

doctrine of *respondeat superior*." *Id*. at 4.  Plaintiffs allege that they timely filed a "form 95" with the United States Department of the Army, Defendant Williams' employer, and filed the complaint "within the six-month period of time for filing [an] action against the United States of America after its said denial." *Id.*

After the Court granted additional time to respond to the amended complaint, ECF 49, Defendant United States filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) on September 30, 2022, seeking to dismiss Plaintiffs' claims against the United States. ECF 50.  In short, Defendant United States argues that the Court lacks subject matter jurisdiction over claims against it because Defendant Williams was "not acting within the scope of her employment at the time of the accident."  ECF 50-1, at 4.  Defendant United States also asserts that "Plaintiffs cannot recover from the United States in tort because [Plaintiff Philip] Butt received benefits under the FECA [Federal Employees' Compensation Act], which provides Plaintiffs with their sole remedy."  *Id.*

Plaintiffs do not oppose the Government's Motion to Dismiss.  ECF 51, at 7–8.  Plaintiffs concede that Mr. Butt received "workers' compensation benefits under FECA" and therefore "[Mr. Butt] and his wife are precluded from seeking recovery under the FTCA . . . ."  *Id.* at 4.  Plaintiffs further concede that since they are "statutorily barred from seeking any monetary recovery from the United States of America," the Court "need not consider the issue" of whether Defendant Williams was serving as an employee of the federal government at the time of the incident.  *Id.* at 5.  Regardless, Plaintiffs further allow that they have not carried their burden to show that Defendant Williams was acting within the scope of her government employment and therefore represent that "the sole remedy available to the Plaintiffs to seek recompense for injuries and

damages sustained [in the accident] would be the first and third party claims pending against [Defendant] Williams individually (GEICO) and Mr. Butt's insurance carrier, GEICO." *Id.* at 7.

Defendant Williams, however, contends that she was acting within the scope of her government employment at the time of the accident and opposes the Government's Motion to Dismiss. ECF 52, at 1. Defendant Williams originally filed a cross-motion for certification as part of her response to the Government's Motion to Dismiss. ECF 52-1. She supported both her opposition to the Motion to Dismiss and her cross-motion for certification with the same memorandum of law. *See* ECF 52-2. The United States replied and opposed Defendant Williams' cross-motion for certification. ECF 57. Defendant Williams replied and requested an evidentiary hearing on the matter. ECF 58. Plaintiffs filed an untimely opposition to Defendant Williams' cross-motion for certification. ECF 61. Intervenor GEICO did not file any responses to the pending motions but indicated to chambers by email on December 8, 2022, that it takes no position on the pending motions.

After the Court held a teleconference about a potential evidentiary hearing and related matters on January 20, 2023, the parties decided that Defendant Williams would re-file the motion for certification after a limited period of discovery. *See* ECFs 62–65. Defendant Williams re-filed her Motion for Certification on May 12, 2023, supported by a memorandum of law and exhibits, including depositions of Defendant Williams and her former supervisor, Thomas R. ECF 69. The Government opposed, attaching to its opposition as exhibits Defendant Williams' deposition, Thomas R.'s deposition, Defendant Williams' request for Department of Justice ("DOJ") representation, and the DOJ's denial of that request. ECF 72. Plaintiffs also responded to the Motion for Certification (albeit untimely). ECF 73. Though their precise position is not entirely clear, it appears Plaintiffs oppose the Motion for Certification, as they note that "Defendant Ms.

Williams' failure to follow NSA security protocols and her failure to stop at the NSA check point entrance to the Friendship Annex are inexorably tied to her negligent driving . . . ." *Id.* at 2. Defendant Williams replied.  ECF 74.  All pending motions are now ripe for decision.

## II.   Discussion

### A.  Motion for Certification

Though filed later in time, the Court first addresses Defendant Williams' Motion for Certification, as the answer to the question of whether Ms. Williams was acting within the scope of her employment is also relevant to the United States' Motion to Dismiss and affects the viability of this case as whole.  If Ms. Williams was acting within the scope of her employment during the brief moment when she failed to show her badge to the NSA police officer, then, under the FTCA, the United States "shall defend any civil action or proceeding brought in any court against any employee of the Government . . . for any such damage or injury."  28 U.S.C. § 2679(c).[11]  In that instance, the United States would take Ms. Williams' place as the defendant in this suit.  *See* 28 U.S.C. § 2679(d)(1) ("Upon certification . . . that the defendant employee was acting within the scope of his . . . employment at the time of the incident out of which the claim arose, [the action] shall be deemed an action against the United States . . . , and the United States shall be substituted as the party defendant.").  However, because Plaintiffs have already recovered under FECA, they cannot recover from the United States again.  *See* 5 U.S.C. § 8116(c); ECF 51, at 4 (noting that Plaintiffs concede the same).  As such, if the Court finds that Defendant Williams was acting within the scope of her employment, both Defendant Williams and the United States must be

---

[11] "[A]ny such damage or injury" refers to "injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission" of the Government employee. 28 U.S.C. § 2679(b)(1).

dismissed from this suit.  *See* 28 U.S.C. § 2679(c); 5 U.S.C. § 8116(c); *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 427 (1995) ("When the United States retains immunity from suit [and where plaintiffs cannot otherwise recover under the FTCA], certification disarms plaintiffs.  They may not proceed against the United States, nor may they pursue the employee shielded by the certification.").  Though it goes largely unaddressed in the motions currently before the Court, it appears the case would then proceed only against Mr. Butt's insurer, GEICO.  If, however, Defendant Williams was not acting within the scope of her employment, the case can proceed against her individually.[12]  After carefully reviewing the submissions of the parties, the Court finds that Defendant Williams was acting within the scope of her employment at the time of the incident giving rise to this litigation.

"When a federal employee is sued, the United States Attorney, acting on behalf of the Attorney General, must certify whether that employee was in fact acting within the scope of his or her employment at the time of the alleged tortious act."  *Maron v. United States*, 126 F.3d 317, 321 (4th Cir. 1997) (citing 28 U.S.C. § 2679(d)(1)).  Federal employees enjoy "absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties."  *Osborn v. Haley*, 549 U.S. 225, 229 (2007) (citing 28 U.S.C. § 2679(b)(1)); *see also* 28 U.S.C. § 2674.  If the Attorney General declines to certify that an employee was acting within the scope of her employment, the Court has the authority to review the Attorney General's scope-of-

---

[12] The Court notes that the fact that Mr. Butt was deemed to be acting within the scope of his employment for his FECA workers' compensation claim is not instructive as to whether Ms. Williams was acting within the scope of her employment at the time of the incident.  *See Germain v. Norris*, 536 F. Supp. 2d 585, 591 n.9 (D. Md. 2008); *Kerns v. United States*, No. CCB-07-1006, 2011 WL 1230360, at *6 (D. Md. Mar. 28, 2011), *aff'd*, 478 F. App'x 44 (4th Cir. 2012); *Sheets v. Chepko*, 573 A.2d 413, 418 (Md. App. 1990); *Henderson v. AT&T Info. Sys.,* 552 A.2d 935, 940–41 (Md. App. 1989).

employment decision.[13] 28 U.S.C. § 2679(d)(3); *see also Gutierrez de Martinez*, 515 U.S. at 436–37.  In such cases, the Court reviews the certification determination *de novo*, and the party challenging the Attorney General's certification bears the burden of proof by a preponderance of the evidence.  *Maron*, 126 F.3d at 322–23; *see also Feldheim v. Turner*, 743 F. Supp. 2d 551, 556 (E.D. Va. 2010) (finding that, where a defendant employee challenges the Attorney General's denial of certification, "the legal standard and burden of persuasion" is the same as where a plaintiff challenges the Attorney General's grant of certification).  "[T]he certification satisfies the government's prima facie burden but does not carry any evidentiary weight unless it details and explains the bases for its conclusions."  *Maron*, 126 F.3d at 323.

Whether a federal employee's action falls within the scope of her employment must "be determined according to the rules of respondeat superior of the state in which the wrongful conduct occurred."  *Jamison v. Wiley*, 14 F.3d 222, 237 (4th Cir. 1994).  Since the incident giving rise to this action occurred in Maryland, Maryland's respondeat superior rules govern the scope-of-employment determination.  The parties here, however, dispute *which* Maryland rule applies.  Defendant Williams argues that the Court should apply Maryland's general vicarious liability test outlined in *Sawyer v. Humphries*, 587 A.2d 467 (Md. 1991).[14]  ECF 69-1, at 7–9.  Defendant United States argues that Maryland's narrower test for automobile accidents, outlined in

---

[13] At this juncture, the parties do not dispute that Defendant Williams has followed the proper procedures outlined in 28 U.S.C. § 2679(c), and that the Attorney General refused to certify that Ms. Williams was acting within the scope of her employment at the time of the incident giving rise to this litigation.  *See* ECF 69-1, at 1; ECF 72, at 5–7; ECF 72-2.

[14] Effective December 14, 2022, after ratification by the people of Maryland, the names of Maryland's appellate courts changed.  Maryland's highest court, the Court of Appeals of Maryland, became the Supreme Court of Maryland.  Maryland's intermediate appellate court, the Court of Special Appeals, became the Appellate Court of Maryland.  Citation references to "Md." pertain to Maryland's highest court and "Md. App." to the intermediate appellate court.

*Henkelmann v. Metropolitan Life Insurance Co.*, 26 A.2d 418 (Md. 1942), and *Dhanraj v. Potomac Electric Power Co.*, 506 A.2d 224 (Md. 1986), applies because this case involves an "employee's negligent operation of a motor vehicle."   ECF 72, at 8.   Maryland courts have looked to the Restatement of Agency for guidance on vicarious liability.   *See Sawyer*, 587 A.2d at 471 (noting that Maryland's highest court has previously "quote[d] with approval" the Restatement of Agency § 229 (1933)); *Oaks v. Connors*, 660 A.2d 423, 427 (Md. 1995) (citing Restatement (Second) of Agency § 229 cmt. D, 235 (1958) for the proposition that employers are generally not liable for the tortious acts of their employees committed while the employee is commuting to work). "Ordinarily, the question of whether an employee's conduct is within the scope of employment is one for the jury. . . . The issue becomes a question of law, however, when there is no factual dispute."   *Tall v. Bd. of Sch. Comm'rs of Balt. City*, 706 A.2d 659, 668 (Md. App. 1998) (Hollander, J.) (citations omitted).[15]

Under the *Sawyer* test, "an employee's tortious acts were within the scope of his employment [when] they [1] were in furtherance of the employer's business and [2] were 'authorized' by the employer."   *Sawyer*, 587 A.2d at 470.   In the narrower automobile accident context, "Maryland has developed a two-part test, focusing on whether an employer (1) 'expressly or impliedly consents to the use of the automobile' and (2) had the 'right to control the servant in [the automobile's] operation . . . .'"   *Germain v. Norris*, 536 F. Supp. 2d 585, 591 (D. Md. 2008) (citing *Henkelmann*, 26 A.2d at 423).   Generally, "absent special circumstances, an employer will

---

[15] Here, the only factual dispute pertains to whether Thomas R., Ms. Williams' supervisor, told Plaintiff she could begin tracking her time when she passed through the security gate.   Because the answer to this question does not change the outcome of the scope-of-employment question, the Court will proceed treating the issue as a legal one.

not be vicariously liable for the negligent conduct of [their] employee occurring while the employee is traveling to or from work." *Dhanraj*, 506 A.2d at 226.

Applying the automobile test, courts have held that "[d]riving to and from work is generally not considered to be within the scope of . . . employment because getting to work is the employee's own responsibility and ordinarily does not involve advancing the employer's interests." *Oaks*, 660 A.2d at 427 (citing *Dhanraj*, 506 A.3d at 226). However, even under the narrower test, an employee can still be found to be acting within the scope of her employment despite the incident giving rise to the litigation occurring while the employee was in her personal vehicle if she is complying with the requirements of her job. *See Germain*, 536 F. Supp. 2d at 593 (denying summary judgment and holding that whether an employee was acting within the scope of his employment was a jury question when the employee got into an accident while driving between job sites in his personal vehicle, at the instruction of his employer, and while being compensated); *L.M.T. Steel Prods., Inc. v. Peirson*, 425 A.2d 242, 246 (Md. App. 1981) (affirming a jury verdict holding the employer vicariously liable where the employee was driving in his personal vehicle from a worksite to an offsite payphone to call his employer); *Regal Laundry Co., Inc. v. A.S. Abell Co.*, 163 A. 845, 847–48 (Md. 1933) (finding that a reporter was acting within the scope of his employment when driving his personal vehicle to and from a meeting because the employer reimbursed the reporter for his mileage and because the reporter had to return to his workplace after the meeting to receive a new assignment).

The Government argues that the *Dhanraj* test applies because Ms. Williams did not "clock in" until she scanned her badge at the FANX building, so she was still commuting at the time of the incident. ECF 72, at 10–11. Because she "was commuting to work when the accident occurred" and there are "no 'special circumstances' that except this case from the 'general rule'

that 'an employer will not be vicariously liable for the negligent conduct of his employee while traveling to or from work,'" the Government argues that she was not within the scope of her employment. *Id.* at 11 (citing *Dhanraj*, 506 A.2d at 226).

The Court finds that the unique facts of this case constitute special circumstances, rendering the general *Sawyer* test—not the narrower automobile accident test—applicable here. In short, Plaintiff's alleged negligence did not depend on the use of a vehicle as it involved the failure to display an identification badge to an NSA police officer and immediate consequences resulting from that failure. Further, the Court finds that, under *Sawyer*, Ms. Williams was acting within the scope of her employment when she failed to show her identification badge to NSA police at a manned security checkpoint.

Even if Defendant Williams was in her car and not yet "clocked in," this is not a traditional automobile accident during an employee's commute. It is undisputed that Mr. Butt's injuries were not caused by a collision of cars on a public road while commuting to or from work, but by an NSA police officer's activation of a security barrier at a checkpoint erected and enforced by Ms. Williams' employer. ECF 34, at 2–3; ECF 69-1, at 10; ECF 72, at 11. Though this chain of events was set off by Ms. Williams' actions while driving, that the incident was not an automobile accident in the traditional sense renders three of the cases the Government cites inapposite and takes this case out of the narrower automobile accident test's ambit. *See Dhanraj*, 506 A.2d at 225 (employee driving vehicle to a job site and struck another vehicle in heavy traffic); *Barclay v. Briscoe*, 47 A.3d 560, 562 (Md. 2012) (employee travelling home from work and struck another vehicle on a public road); *Sheets v. Chepko*, 573 A.2d 413, 413 (Md. App. 1990) (employee involved in an auto accident while en route to work).

Indeed, the mere fact that an incident giving rise to the litigation occurred while the tortfeasor operated a vehicle does not mandate application of the general commuter rule against employer liability.  *See Dhanraj*, 506 A.2d at 226 (recognizing that an employer can still be liable for an employee's actions while commuting if "special circumstances" exist).  *Germain*, also cited by the Government in support of applying the *Dhanraj* test, actually cuts against the Government's position.  In *Germain*, an employee who was traveling between job sites was involved in a traffic accident on a public road.  536 F. Supp. 2d at 593–94.  While the facts in *Germain* differ from those here in the sense that the *Germain* employee was *required* to operate his own vehicle by his employer, the Court in *Germain* notably observed that *Dhanraj* was factually distinguishable because the employee in *Germain* "was *driving between job sites* and not 'to or from work,'" which rendered the general rule against employer liability for a commuting employee's accident inapplicable.  *Id.* at 591 (emphasis in original).  Thus, the mere fact that Ms. Williams was operating a vehicle at the time of the incident here does not mandate application of the *Dhanraj* test.

Further, when Maryland's highest court loosened the applicability of the respondeat superior doctrine in the automobile context in the 1940s, it did so based on the "accompanying dangers" of the use of a motor vehicle.  *Henkelmann*, 26 A.2d at 422–23.  Those "accompanying dangers" are not present in here because, as noted above, this case does not involve a car collision in the traditional sense.   Rather, Ms. Williams' failure to comply with her employer's security protocol—namely, producing her identification at the checkpoint on NSA property—caused the NSA police officer to deploy the security barrier that injured Mr. Butt.  For these reasons, the *Sawyer* test applies.

Under *Sawyer*, Ms. Williams was acting within the scope of her employment if (1) she was acting in furtherance of the NSA's business and (2) her actions were authorized by the NSA.  *See Sawyer*, 587 A.2d at 470.  In making this determination, the Court considers the following factors:

> whether the action was in furtherance of the employer's business or was personal to the employee, whether it occurred during the period when the employee was on duty for the employer, whether it related to the employee's duties, whether the action was in a broad sense authorized by the employer, whether the employer had reason to expect that the type of action might occur, whether it occurred in an authorized locality, etc.

*Lovelace v. Anderson*, 785 A.2d 726, 742 (Md. 2001) (citing *Sawyer*, 587 A.2d at 471).  Ordinarily, whether an employee's conduct "furthers [her] master's business" is assessed under the "totality of circumstances."  *Khatami v. Compton*, 844 F. Supp. 2d 654, 659 (D. Md. 2012) (citing *Sawyer*, 587 A.2d at 470–71).  Additionally, "authorized," in this context, does not mean "authority expressly conferred, but whether the act was such as was incident to the performance of the duties entrusted to him by the master, even though in opposition to his express and positive orders."  *Sawyer*, 587 A.2d at 470 (quoting *Hopkins C. Co. v. Read Drug & C. Co.*, 92 A. 478, 479–80 (Md. 1914)).

The Government argues that because Ms. Williams had not yet badged into the FANX building and was driving her personal vehicle (despite having other transportation options), she was not acting in furtherance of the NSA's business.  ECF 72, at 10–11.  In the Government's view, the precise timing of when Ms. Williams began her official job duties is the most important, if not dispositive, factor on this question.  The Government also argues that failing to show her identification at the security checkpoint was not conduct authorized by the NSA (or incidental to the NSA's authorization).  *Id.* at 13–14.  Therefore, according to the Government, she was not acting within the scope of her employment.  *Id.* at 14.

Though not binding precedent, *Torres v. United States*, No. 19-16395, 2019 WL 5677751 (D.N.J. Nov. 1, 2019), is instructive. *Torres* involved an incident at a security checkpoint at U.S. Customs and Border Protection ("CBP") at Newark Airport. *Id.* at *1. The *Torres* plaintiff was a security officer (not employed by the federal government) whose duty it was to inspect the identification ("ID") cards of all inbound employees and to check their vehicles for occupants. *Id.* While the plaintiff was on duty, he requested that the defendant, a CBP employee, present his ID and roll down his window at the security checkpoint. *Id.* The defendant presented his ID but initially refused to roll down his car window. *Id.* He eventually complied by lowering his window slightly while "argu[ing]" with the plaintiff. *Id.* During a subsequent encounter at the same security checkpoint five months later, the defendant "pulled up in his car and accelerated as he approached" the plaintiff, causing the plaintiff to run out of the way for fear of being struck. *Id.* The plaintiff brought claims against the CBP officer defendant for assault and intentional infliction of emotional distress in state court related to this subsequent encounter. *Id.* The United States then filed a certification of scope of employment and a notice of removal, taking the opposite position taken by the Government here and noting that it was the proper defendant under the FTCA and that the federal courts had jurisdiction. *Id.* The plaintiff challenged the scope-of-employment certification, which the District of New Jersey rejected. *Id.* at *2–3. The court held that "it is reasonable to conclude that an employee's presentation of ID and entry into the workplace is within the scope of employment" because CBP officers are "authorized and required to be at the airport during working hours" and "[p]resentation of a valid ID at a security checkpoint is an important aspect of a national security job."[16] *Id.* at *3.

---

[16] The *Torres* court applied New Jersey law. "New Jersey looks to whether the action (1) is of the kind that the servant is employed to perform; (2) occurs substantially within the authorized time and space limits of employment; and (3) is actuated, at least in part, by a purpose to serve the

The District Court for the District of Columbia has also found an employee to be acting within the scope of employment when required to show identification at a secured employee entrance, even when the employee's conduct at that secured entrance allegedly led to the employee committing an intentional tort.  In *Majano v. United States*, Mary Majano, a custodial worker at the Smithsonian Institution ("Smithsonian"), brought suit against Ms. Jeanny Kim, a manager at the Smithsonian, after Ms. Kim allegedly "assaulted and injured [Ms. Majano] after Ms. Majano insisted that Ms. Kim show employee identification before entering a Smithsonian building."  545 F. Supp. 2d 136, 138 (D.D.C. 2008).  After removing the action to federal court, the United States filed a certification that Ms. Kim was acting within the scope of employment at the time of the incident and moved to substitute itself as the defendant in the case.  *Id.*  Ms. Majano challenged the certification.[17]  *Id.*  Security protocols at the Smithsonian building prohibited employees entering through a secured door from letting other employees "piggyback" through.  *Id.* at 139. Each employee had to use their own access card to enter the building separately.  *Id.*  On the day of the incident, Ms. Majano arrived for work and entered the Smithsonian building from a secured employee-only door.  *Id.* at 140.  Ms. Kim, also going to work at her office upstairs then forced

_____

master."  *Torres*, 2019 WL 5677751, at *3 (quoting *Abbamont v. Piscataway Tp. Bd. Of Educ.,* 650 A.2d 958, 963 (N.J. 1994)).

[17] In *Majano*, the district court had "previously determined on summary judgment that Ms. Kim was acting within the scope of her employment."  545 F. Supp. 2d at 138.  After Ms. Majano appealed that decision, the D.C. Circuit remanded for an evidentiary hearing.  *Majano v. United States,* 469 F.3d 138, 142 (D.C. Cir. 2006).  In the D.C. Circuit's view, Ms. Kim's "forcible entry into the building appears to [have been] motivated, at least in part, by her desire to fulfill [her duty to report to work, b]ut once she gained access to the building, Kim's assault of Majano" may have been "an independent trespass."  *Id.*  A hearing was necessary to resolve whether Ms. Kim remained within the scope of her employment at the precise moment she allegedly committed the intentional tort.  *Id.*  That issue is not present in this case, where no intentional tort has been alleged and where the facts necessary to resolve the question of whether Ms. Williams was acting within the scope of her employment at the time of Mr. Butt's injuries are not in dispute.  Thus, no hearing is necessary here.

her way through the door opened by Ms. Majano.  *Id.* at 140–41.  Ms. Majano, in an effort to enforce her employer's security protocols and prevent "piggybacking," asked to see Ms. Kim's identification ("ID").  *Id.*  Ms. Kim proceeded to show some form of ID, but Ms. Majano believed Ms. Kim had not shown the correct ID card required for entry into the Smithsonian and continued to ask for ID as the two women continued down the hallway towards the elevators.  *Id.* at 141.  Ms. Kim was confused and flustered as she often did not have to show her ID to Smithsonian security officers, and she failed to satisfy Ms. Majano's demand to produce additional identification.  *Id.* When the women reached the elevators, a physical altercation ensued as both women demanded to see each other's ID.  *Id.* at 142.

The court, applying D.C. law and the Restatement of Agency, held that Ms. Kim was acting within the scope of her employment at the time of the incident.  *Id.* at 147.  The court noted that "Ms. Kim was entering the Victor Building to perform work on behalf of the Smithsonian, which she needed to access by way of the elevator."  *Id.* at 146.  The court found the altercation to be expectable and foreseeable as a result of the unequally enforced security protocols.  *Id.*  Further, the court held that Ms. Kim's conduct during the physical altercation "was of the kind she was employed to perform, *i.e.*, entering the building to go to work and checking the ID of a custodial employee of whom she wanted to complain" and that "[t]he incident occurred within authorized time and space limits."  *Id.* at 147.  The *Majano* court did not explicitly analyze whether Ms. Kim was officially "on-the-clock" at the time of the incident, only noting that Ms. Kim "was going to work when she entered the Victor Building and was confronted by Ms. Majano demanding identification."  *Id.* at 143.  Instead, the court's scope-of-employment analysis focused on compliance with the employer's security protocols.  *Id.* at 146–47.

Thus, the fact that an employee is not officially "clocked in" is not necessarily dispositive, especially in cases where employees must pass through security checkpoints on their way to work and where the security screening benefits the employer.  *See id.; Torres,* 2019 WL 5677751, at *3; *see also Cook v. Pinola*, No. 3:03-CV-70, 2005 WL 8161901, at *1 (E.D. Tenn. Apr. 11, 2005) (applying Tennessee vicarious liability law and noting that an airline pilot reporting for work who got into an altercation at a TSA checkpoint "may have been within the course and scope of his employment" while he was "going through the security checkpoint" but ultimately not finding the pilot's employer vicariously liable because the intentional tort the pilot allegedly committed at the checkpoint "was not expectable by [the pilot's employer] given the nature of [the pilot's] job duties").

Indeed, other cases, including those applying Maryland law, have stressed that whether an employee is "clocked in" is not the Court's sole inquiry since "[t]o be within the scope of the employment the conduct must be of the kind the servant is employed to perform and must occur during a period *not unreasonably disconnected* from the authorized period of employment in a locality *not unreasonably distant* from the authorized area, and actuated *at least in part* by a purpose to serve the master."  *East Coast Freight Lines v. Baltimore*, 58 A.2d 290, 304 (Md. 1948) (citations omitted) (emphasis added); *Hanford v. J.C. Penney Corp., Inc.*, No. 18-11363, 2019 WL 5696698, at *3 (E.D. Mich. Nov. 4, 2019) ("However, the fact that Richardson performed work on behalf of his employer off the clock does not necessarily remove that work from the scope of his employment.").

Here, Ms. Williams was "acting in furtherance of [her] employer's business" as she was passing through an employer-owned and -operated security checkpoint at the time of the incident. *Sawyer*, 587 A.2d at 470.  Ms. Williams, like all NSA employees, was required to perform her

primary duties on-site due to the sensitive nature of the work.  ECF 72-4, at 7.  She, like all employees, was also required by the NSA to show her identification badge upon entry into FANX.  ECF 69-4, at 12–14.  Employees' participation in such security protocols furthers the NSA's security interests.  *See id.* at 14.  The Government argues that whether Mr. Butt's injuries were caused by Ms. Williams' negligent driving or her failure to comply with NSA security protocols is a "false and meaningless" distinction.  ECF 72, at 11.  The Court disagrees.  The facts here are not analogous someone failing to stop at a stop sign.  *See id.* at 12.  Ms. Williams was not negligently failing to follow the rules of the road.  Rather, she failed to follow the rules imposed on her by her employer.  The security protocols (botched or not) do not further any personal interest of Ms. Williams.  Further, Ms. Williams' allegedly negligent conduct was related closely in time and space to her job duties as she needed to pass through the checkpoint and be on the premises to do her job.  And, regardless of whether Ms. Williams was officially "on the clock" at the security gate or at her desk, she was complying with her employer's requirements at the time of the incident and her job duties were sufficiently immediate to meet this factor.

Ms. Williams' actions were also "authorized" by her employer.  The Government reads the meaning of "authorized" too narrowly.  *See id.* at 13.  In determining whether an act was "authorized," the Court considers numerous factors, including whether it "was incident to the performance of the duties entrusted to him by the master, even though in opposition to his express and positive orders."  *Sawyer*, 587 A.2d at 470 (quoting *Hopkins C. Co.*, 92 A. at 479–80); *see also Wallen v. Domm*, 700 F.2d 124, 126 (4th Cir. 1983) (per curiam) ("[W]rongful activity incidental to an otherwise proper exercise of authority must fall within the immunity claim.").  One such "important factor is whether the employee's conduct was 'expectable' or 'foreseeable.'"  *Id.* at 471.  The Court finds that Ms. Williams' failure to show her identification at the security

20

checkpoint was "incident to the performance of the duties entrusted to [her] by [her employer]." *Id.* at 470.  Despite Ms. Williams acting "in opposition to [her employer's] express and positive orders" to show her identification upon entry through the security checkpoint, her failure to do so was inextricably related to that mandate from her employer.  *Id.*  Further, an employee's imperfect adherence to the NSA's security protocols is expectable and foreseeable.  As such, the Court finds that Ms. Williams' actions at the time of the incident were authorized by her employer.

Based on the totality of the circumstances, Ms. Williams was acting within the scope of her employment when she failed to properly comply with NSA security protocols at the NSA checkpoint, causing the NSA police officer to deploy the anti-vehicle barrier that struck Mr. Butt's vehicle.  Because Ms. Williams was acting within the scope of her employment, the United States is bound by the FTCA to take her place as party defendant.

### B.  Motion to Dismiss

The Court next turns to the Government's Motion to Dismiss.  ECF 50.  The Government argues that dismissal of Plaintiffs' claims against the Government is appropriate under Federal Rule of Civil Procedure 12(b)(1) because (1) Plaintiff has already received workers' compensation benefits under FECA and is thus precluded from further recovery from the Government, and (2) the United States enjoys sovereign immunity as Ms. Williams was not acting within the scope of her employment.  ECF 50-1, at 4–7.  Plaintiffs agree that the Government's Motion should be granted on the FECA ground.  ECF 51, at 8.  Defendant Williams did not address the FECA argument, focusing instead on the scope-of-employment issue.  ECF 52-2, at 4–10.  As noted above, the Court finds that Defendant Williams was acting within the scope of her employment at the time of the incident.  The Government's sovereign immunity argument is therefore unavailing.

Nevertheless, the Court will grant Defendant's Motion to Dismiss because Mr. Butt has already received compensation from the Government through FECA.

A Rule 12(b)(1) motion to dismiss tests a federal court's authority to hear a claim.  Fed. R. Civ. P. 12(b)(1); *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009).  A court deciding a Rule 12(b)(1) motion can consider "the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."  *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).  "The district court should grant the Rule 12(b)(1) motion to dismiss 'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'"  *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (quoting *Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at 768)).  The plaintiff generally bears the burden of demonstrating by a preponderance of the evidence that a court has subject matter jurisdiction over the case.  *Piney Run Preservation Ass'n v. Cnty. Comm'rs of Carroll Cnty.*, 523 F.3d 453, 459 (4th Cir. 2008).

"In 1916, Congress enacted FECA to provide benefits to federal employees injured or killed in the course of performing their duties."  *Noble v. United State*s, 216 F.3d 1229, 1234 (11th Cir. 2000) (citing 5 U.S.C. § 8102(a)).  FECA "provides a comprehensive system of compensation for federal employees who sustain work-related injuries."  *United States v. Lorenzetti*, 467 U.S. 167, 168 (1984).  "Congress amended FECA in 1949 expressly to provide that FECA is the federal employee's *exclusive* remedy against the federal government for on-the-job injuries."  *Noble*, 216 F.3d at 1234 (citing 5 U.S.C. § 8116(c)[18]) (emphasis added); *see also Lockheed Aircraft Corp. v.*

---

[18] 5 U.S.C. § 8116(c) provides:

*United States*, 460 U.S. 190, 191 (1983).  "In enacting [FECA,] Congress adopted the principal compromise—the 'quid pro quo'—commonly found in workers' compensation legislation: employees are guaranteed the right to receive immediate, fixed benefits, regardless of fault and without need for litigation, but in return they lose the right to sue the Government."  *Lockheed Aircraft Corp.*, 460 U.S. at 194; *Metz v. United States*, 723 F. Supp. 1133, 1135–36 (D. Md. 1989).  FECA serves as "a substitute for the whole of the claim that, but for it, would have arisen under the Tort Claims Act."  *Spinelli v. Goss*, 446 F.3d 159, 161 (D.C. Cir. 2006) (quoting *Balancio v. United States*, 267 F.2d 135, 137 (2d Cir. 1959)).

In their amended complaint, Mr. and Mrs. Butt allege that the United States is liable for Defendant Williams' negligence under the FTCA.  ECF 34, at 4.  However, there is no dispute that Plaintiff Philip Butt applied for and received FECA benefits from the Secretary of Labor based on the injuries suffered in the September 16, 2019, accident.  ECF 51, at 4 ("Plaintiff does not dispute the assertions of the United States of America that he received workers' compensation benefits under FECA . . . .").[19]  The FECA decision is not reviewable by this Court.  *Southwest Marine v.*

---

The liability of the United States or an instrumentality thereof with respect to the injury or death of an employee is exclusive and instead of all other liability of the United States or the instrumentality to the employee, his legal representative, spouse, dependents, next of kin, and any other person otherwise entitled to recover damages from the United States or the instrumentality because of the injury or death in a direct judicial proceeding, in a civil action, or in admiralty, or by an administrative or judicial proceeding under a workmen's compensation statute or under a Federal tort liability statute.

[19] As noted, in deciding a 12(b)(1) motion, the Court "may consider evidence outside the pleadings" to help determine whether it has jurisdiction over the case before it. *Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at 768.  Defendant United States offers an email from Plaintiffs' counsel confirming that Mr. Butt's FECA claim from the September 16, 2019, incident was "approved," and that Mr. Butt was, as of November 16, 2020, "receiving [FECA] benefits."  ECF 50-3, at 1–2.  Plaintiffs confirm as much in their response to the Government's motion.  ECF 51, at 4.  Since no party disputes Mr. Butt's representation regarding FECA compensation, the Court will consider this fact as sufficiently proven.

*Gizoni*, 502 U.S. 81, 91 (1991) ("FECA contains an 'unambiguous and comprehensive' provision barring any judicial review of the Secretary of Labor's determination of FECA coverage. . . . Consequently, the courts have no jurisdiction over FECA claims where the Secretary or Labor determines that FECA applies." (citations omitted)).   "Thus, as a matter of law," Mr. Butt "cannot now pursue the same work-related claims before this Court."   *Shahin v. United States*, No. 8:20-CV-03242-PX, 2021 WL 2949786, at *4 (D. Md. July 14, 2021) (citing *Metz*, 723 F. Supp. at 1136–37). Stated differently, this Court lacks subject matter jurisdiction over Mr. Butt's claims against the United States because Mr. Butt already received benefits under FECA.   *Waddell v. United States*, 89 F.3d 831, 1996 WL 342996, at *2 (4th Cir. 1996) (table decision) ("[T]he district court should have dismissed the case for lack of subject matter jurisdiction because Waddell had already received benefits under the FECA.").

The same is true of Plaintiff Sandra Butt's loss of consortium claim.  The parties agree as much.  *See* ECF 50-1, at 6 (citing 5 U.S.C. § 8116(c)); ECF 51, at 4 ("Plaintiff does not dispute [that] Plaintiff and his wife Sandra Butt as a derivative Plaintiff are precluded from seeking recovery under the FTCA pursuant to 5 U.S.C. Sec. 8116(c).").  FECA's exclusivity provision applies equally to a "spouse entitled to recover damages from the United States or the instrumentality because of the injury."  5 U.S.C. § 8116(c); *see also Vulcan Materials Co. v. Massiah*, 645 F.3d 249, 263 (4th Cir. 2011); *Aponte v. U.S. Dep't of Treasury*, 940 F. Supp. 898, 902 (E.D.N.C. 1996) ("The Secretary's determination of FECA coverage also includes Mrs. Aponte's particular claims of emotional damage and loss of consortium."); *Swafford v. United States*, 998 F.2d 837, 841 (10th Cir. 1993) ("Thus, FECA compensation to [the plaintiff], a federal employee, precludes an FTCA action by her husband for 'loss of . . . consortium . . . .'" (citations omitted)).  Plaintiff Sandra Butt's claim against the United States is entirely premised on the

"injuries sustained by . . . [her husband] Philip Butt" as a result of the alleged "negligence of the Defendants," including the United States of America.  *Id.*  As such, Plaintiff Sandra Butt's claim for loss of consortium against the United States must also be dismissed.  Thus, the Motion to Dismiss the Government as a party to this case is granted.

### III.    Conclusion

For the foregoing reasons, the Government's Motion to Dismiss, ECF 50, is GRANTED, Defendant Williams' Motion for Certification, ECF 69, is GRANTED.  Defendants United States of America and Aaran Kimberly Williams are DISMISSED.  The case proceeds against intervenor GEICO, Plaintiff Philip Butt's insurer.

A separate implementing Order follows.


Dated: <u>August 22, 2023</u>                      <u>                /s/                </u>
                                                                Brendan A. Hurson
                                                                United States Magistrate Judge